**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman**

| | |
|---|---|
| In re: | ) |
| | ) |
| **JAMES DOUGLAS THOMAS and** | ) |
| **MICHELLE SYKES-THOMAS,** | ) |
| | ) |
| **Debtors.** | ) |
| | ) **Case No. 13-11653 HRT** |
| ———————————————— | ) **Chapter 13** |
| | ) |
| **HIT, Inc.,** | ) |
| | ) |
| **Movant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **JAMES DOUGLAS THOMAS and** | ) |
| **MICHELLE SYKES-THOMAS,** | ) |
| | ) |
| **Respondents.** | ) |

## ORDER

This case comes before the Court on HIT, Inc.'s *Motion for Relief from Automatic Stay* (docket #10) (the "Motion for Relief from Stay") and the Debtor's response thereto (docket #21). In addition, the Debtors have filed *Debtors' Emergency Motion under Rule 9020 for Contempt and for Damages under Section 362(k) for Violation of Automatic Stay and Request for Forthwith Emergency Cease and Desist Order* (docket #47) (the "Emergency Motion") and *Motion to Extend Debtors' Time to Assume or Reject Leases and Notice of Chapter 13 Plan Terms of Part V.G* (docket #33) (the "Motion to Extend").  The Court held a hearing on the Debtor's request for a cease and desist order in connection with their Emergency Motion on April, 5 2013, followed by a hearing on the Motion for Relief from Stay on April 11 and 12, 2013.

After considering the pleadings as well as cumulative testimony and evidence admitted at both hearings, the Court GRANTS the Motion for Relief from Stay, GRANTS IN PART the Debtors' Emergency Motion, and GRANTS the Debtors' Motion to Extend.

## I.  FACTS

The Debtors, Michelle Sykes-Thomas and James Thomas, own and operate Platinum Play, Inc., a family fun center which hosts birthday parties, wedding receptions, and other types of public and private entertainments.  While Platinum Play is not a debtor in bankruptcy, the Debtors' efforts to open and operate Platinum Play have led to their personal bankruptcy case.

ORDER
Case No. 13-11653 HRT

Specifically, the Debtors' contentious business relationship with their landlord, HIT, Inc., (the "Landlord") underlies all of the motions before the Court.

The Debtors incorporated Platinum Play in the summer of 2011 and, contemporaneously, began discussions with the Landlord about leasing a commercial space suitable for hosting events.  The Landlord showed the Debtors a 35,000 square foot space located at 9395 East Montview Blvd. in Aurora, Colorado (the "Property").  The Property is one of several commercial spaces located in a larger shopping center.  The shopping center is also the home of other businesses including a liquor store, and Club Galaxy, a nightclub.[1]

While the Property was once the home of a large grocery store, it sat vacant for at least a decade and was in disrepair.  Both the Landlord and the Debtors knew the Property would require improvement before the Debtors would be able to occupy the space and open their business.  According to the Debtors, they believed that the Property required minor repairs to the electrical system, a new HVAC unit, some new lights, and a thorough cleaning.  The Debtors based their opinion on alleged representations by Kay Hong, a representative of the Landlord, and their own cursory observations of the Property.  The Debtors did not commission an independent inspection of the Property or perform any other due diligence to determine necessary repairs.  They relied entirely upon their own observations and the representations of the Landlord.

The Debtors agreed to lease the Property from the Landlord.  Michelle Sykes-Thomas signed a five-year lease, allegedly in her individual capacity,[2] on August 5, 2011 (the "Lease").  Under the terms of the Lease, the Debtors were permitted to occupy the Property rent-free for the first year.  After the first year, the obligation to pay monthly rent of $16,305.33 went into effect.  The Lease allows the Debtors to use the Property for "family entertainment (amusement arcade,

---

[1] Club Galaxy opened sometime after the Debtors signed their Lease with the Landlord and took possession of the Property.

[2] The Court is uncertain as to whether it was the intention of the parties that Michelle Sykes-Thomas was to sign the Lease in her individual capacity or whether she was intended to sign as an agent of Platinum Play, Inc.  The title page of the Lease indicates the Lease is between the Landlord and an "individual" as tenant.  However, Michelle Sykes-Thomas signed the Lease as "Owner."  Furthermore, while Michelle Sykes-Thomas signed Exhibits to the Lease without including the title "Owner," in Exhibit D, which is a personal guaranty signed by Michelle Thomas-Sykes and James Thomas, the guaranty lists Platinum Play as the tenant to the Lease.  The Lease is poorly drafted.  However, despite the Court's concerns as to whether Michelle Sykes-Thomas or Platinum Play is the tenant under the Lease, the parties have proceeded in bankruptcy as though Michelle Sykes-Thomas is the lessee and the parties have not argued otherwise.

ORDER
Case No. 13-11653 HRT

gift shop, bakery, snack bar),"[3] under the trade name Platinum Play Fun Center, each day of the week between the hours of 10:00 A.M. and 8:00 P.M.  According to Exhibit B to the Lease, the Debtors took possession of the Property "in an 'As Is' condition."

Exhibit H to the Lease is titled "Property Disclosure Statement."  Under Exhibit H, the Debtors were notified of an Integrated Corrective Action Plan (the "Environmental Plan") which was put in place to cure ground-water contamination caused by tetrachloroethylene (PCE), a chemical commonly used in the dry cleaning industry.  While the Debtors were notified of the Environmental Plan, there is no indication the Debtors investigated the plan's specific steps for remediation.  Michelle candidly admitted she did not fully read the Lease prior to signing it.

The Debtors took possession of the Property on September 1, 2011.  Upon taking possession, the Debtors realized that a portion of the Property needed an entirely new electrical system.  The Debtors replaced a substantial part of the Property's electrical system and allege the improvements cost approximately $50,000.

Around the time the Debtors realized the Property's electrical system needed to be repaired, the Debtors were contacted by Pinyon Environmental Engineering Resources ("Pinyon") and notified of the work Pinyon would have to complete under the Environmental Plan referenced in Exhibit H of the Lease.  According to Pinyon, remediation of the ground-water contamination would require drilling 40 test wells.  The work commenced at the end of September 2011.  According to the Debtors, Pinyon drilled 40 test wells into the floor of the Property and installed a 21,000 gallon water tank inside the Property.  These wells and the water tank stayed inside the leased space until April or May, 2012, and significantly limited the Debtors' ability to make the improvements to the Property which were necessary to open Platinum Play.

Despite significant and unexpected obstacles, the Debtors opened Platinum Play in September, 2012.  In all, the Debtors allege they invested their life savings, approximately $300,000, into the Property prior to opening for business.

As of September, 2012, the Debtors were required to make monthly Lease payments of $16,305.33.  The Debtors made these payments for the months of September and October.  In November, the Debtors paid only $10,000 in rent and they paid no rent in December, January, or February prior to filing this bankruptcy case.

---

[3] While Article V of the Lease expressly permits the Debtors to use the Property for "family entertainment (amusement arcade, gift shop, bakery, snack bar)", the very same Article goes on to expressly prohibit operation of a "video arcade, … children's play or party facility." Again, the Court notes the Lease is poorly drafted.

ORDER
Case No. 13-11653 HRT

In January of 2013, the Landlord assigned a new property manager, Tony Kim (hereinafter, Kim), to oversee the Property. After failing to pay rent in January, the Landlord sent the Debtors a Demand for Compliance or Right to Possession Notice on January 16, 2013. This notice demanded the Debtors pay within three days the past due and owing rent for the months of November, December, and January. The notice also demanded payment for the Debtors' share of the water bill. The Debtors did not pay.

On January 21, the Landlord initiated a Forcible Entry and Unlawful Detainer ("FED") action against the Debtors in Adams County District Court. On February 1, the Debtors filed an Answer, Counterclaims, and Third Party Complaint on behalf of Platinum Play with a Jury Demand. The Debtors' counterclaims ask for relief based on specific performance, fraud in the inducement, rescission and restitution, and unjust enrichment.

The Adams County District Court scheduled a full-day hearing on the Landlord's FED action and the Debtors' counterclaims for February 7; however, on February 7, the Debtors filed their Chapter 13 bankruptcy petition, thus staying the state court proceedings.

On February 19, the Landlord filed its Motion for Relief from Stay so it may proceed with the pending FED action in the Adams County District Court. On March 5, the Debtors filed their objection to the Landlord's motion and on March 8 filed a Motion to Extend Debtors' Time to Assume or Reject Leases.

During the month of March, while the Debtors were still in possession of the leased Property and under the protection of the automatic stay, the Landlord's new property manager, Kim, began to confront the Debtors and the employees and customers of Platinum Play. As a result of these confrontations, on April 4, the Debtors filed their Emergency Motion. The Court held a hearing on the request for a cease and desist order in connection with Debtors' Emergency Motion on April 5.

According to the credible testimony of the Debtors, which was corroborated by credible third party witnesses, Kim aggressively confronted employees of Platinum Play whom he deemed were violating the terms of the Lease.[4] During one particular incident, allegedly instigated by a banner advertising a Zumba dance class which was impermissibly hung in the Property's parking lot, Kim aggressively confronted the dance instructor and her husband in the parking lot, took their pictures, recorded their names, demanded removal of the banner, and

---

[4] Kim's testimony regarding his confrontations with the Debtors and Platinum Play employees and customers was not credible. Initially, Kim insisted that he told no one of the Debtors' bankruptcy or outstanding rent; however, Kim's testimony was impeached by police reports which showed Kim informed the police about the Debtors' outstanding rent.

ORDER
Case No. 13-11653 HRT

loudly proclaimed within the earshot of customers that the Debtors were going though the eviction process and owed $200,000 in rent.

Another confrontation occurred during a joint birthday party for as many as five people hosted by Platinum Play. This event was a private party, which commenced at 8:00 P.M. and ended after midnight. The party attracted well over 100 people of all ages and included live music and liquor. According to Kim, the Debtors were violating the terms of the Lease by operating after 8:00 P.M. and conducting nightclub-like activities, which the Lease prohibits. Kim also alleged that alcohol was being served to minors. In response to the event at Platinum Play, Kim complained to off-duty police officers who were contracted to serve as security at the neighboring Club Galaxy nightclub. The off-duty officers interrupted the event on at least four different occasions that night to question the Debtors and party attendees about the event. No one was arrested.

Also at the hearing on the Debtors' Emergency Motion, the Debtors revealed that Platinum Play has been obtaining special event liquor licenses from the City of Aurora in the name of a non-profit organization founded by James Thomas called The Road Called STRATE.

At the conclusion of the Court's hearing on the Debtors' request for a cease and desist order, the Court declined to enter the injunctive relief and continued the matter. Approximately one week later, on April 11 and 12, the Court held a hearing on the Landlord's Motion for Relief from Stay. At the hearing, the Debtors presented evidence regarding the substantial repairs they made to the leased Property and the expenses they incurred. The evidence also revealed that Platinum Play is not generating enough revenue to pay rent as it comes due to the Landlord and had failed to pay post-petition rent during the months of March and April.

Based on these facts, the Court determines whether the Landlord is entitled to relief from the automatic stay to pursue the pending eviction action in Adams County District Court.

ORDER
Case No. 13-11653 HRT

## II.  DISCUSSION

### A.  Landlord's Motion for Relief from the Automatic Stay

Under section 362(d)(1), upon request by a party in interest, a court may grant relief from the automatic stay for cause.[5]  In deciding whether cause exists to lift the automatic stay, courts consider the so-called "*Curtis* factors" as identified in the case *In re Curtis*.[6]  Those factors are:

(1) Whether the relief will result in a partial or complete resolution of the issues.
(2) The lack of any connection with or interference with the bankruptcy case.
(3) Whether the foreign proceeding involves the debtor as a fiduciary.
(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.
(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.
(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).
(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).
(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.
(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
(12) The impact of the stay on the parties and the "balance of hurt."[7]

---

[5] 11 U.S.C. § 362(d)(1).  Hereinafter, unless otherwise specified, all statutory references shall be to Title 11 of the United States Code.

[6] *In re Curtis*, 40 B.R. 795, 799-800 (Bankr.D.Utah 1984).

[7] *Id*. (citations omitted).

ORDER
Case No. 13-11653 HRT

"Not all of these factors will be relevant in every case … [a]nd the court need not give equal weight to each factor."[8]

Here, factors 1, 2, 4, 6, 7, 10, 11, and 12 are relevant to the facts of this case. Taken together, the Court finds ample cause to lift the stay to allow the pending state court litigation to continue.

The Court will analyze the relevant *Curtis* factors individually.

*Factor 1: Whether the relief will result in a partial or complete resolution of the issues.*

The Landlord's FED action as well as the counterclaims of the Debtors and Platinum Play, a third party corporate entity, are currently before a proper state court and involve state landlord-tenant law, contract law, and allegations of fraud. The causes of action asserted by the parties arise from the same nucleus of operative facts and the state court has the jurisdiction and authority to provide a complete resolution.

In contrast, the Debtors have filed neither an objection to the Landlord's claim nor an adversary proceeding in this Court. Even if the Debtors did file an adversary proceeding in this Court, which asserts the counterclaims already before the state court, the Court doubts it has the jurisdiction to fully adjudicate such claims.[9] As the United States Supreme Court explained in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages[.]"[10] The Court further explained that the adjudication of such private rights, may not be removed from Article III courts and delegated to Article I courts, which include bankruptcy courts.[11]

---

[8] *In re Dryja*, 425 B.R. 608, 611 (Bankr.D.Colo. 2010) (citing *In re Taub*, 413 B.R. 55, 61-62 (Bankr.E.D.N.Y. 2009)).

[9] *See generally Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) (held that the bankruptcy court lacked constitutional jurisdiction to adjudicate counterclaims filed in connection with creditor's proof of claim); *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (broad grant of bankruptcy court jurisdiction contained in Bankruptcy Reform Act of 1978 exceeded constitutional authority of Article I courts).

[10] *Northern Pipeline Construction Co.*, 458 U.S. at 71, 102 S.Ct. at 2871.

[11] *Id.* at 69-70, 2870-71.

ORDER
Case No. 13-11653 HRT

In addition, the Court has no jurisdiction to adjudicate the state court claims of Platinum Play, a third party corporate entity, which is not in bankruptcy.

In sum, this Court cannot provide a complete resolution of the issues which are presently before the state court.  The issues before the state court are not presently before this Court, but most importantly, even if the issues were before this Court, the Court lacks the jurisdictional authority to completely resolve those issues.  Therefore, this factor weighs in favor of granting relief from stay.

*Factor 2:  The lack of any connection with or interference with the bankruptcy case.*

The Debtors' dispute with the Landlord is central to this bankruptcy case.  Resolution of the disputed issues will significantly affect the terms of the Debtors' Chapter 13 plan and may very well determine whether the Debtors remain in Chapter 13 or convert their case to another chapter.  The implications are important for all interested parties and resolution of the state law FED action and associated counterclaims serve as a prerequisite to administration of the case.

Notwithstanding this connection, the Court finds that this factor weighs in favor of granting relief from stay.  Adjudication of the parties' claims, which are before the state court will assist the administration of the estate by providing finality to the claims of the estate. Because this Court likely lacks the jurisdiction necessary to liquidate the Debtors' claims for damages and certainly has no jurisdiction to adjudicate any claims on behalf of Platinum Play, a third party corporate entity, which is not in bankruptcy, for the Court to decline to allow the issues to be settled in the appropriate state court forum would impede administration of the bankruptcy case.

*Factor 4:  Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.*

The state court is a court of general jurisdiction and is not a specialized tribunal as such. Nonetheless, because of jurisdictional issues that would prevent this Court from hearing most of the issues that are now postured before the state court, it is the court with both the jurisdiction and the expertise to settle the issues between these parties.  The Adams County District Court is ready, willing, and perfectly capable of hearing the matters which are before it.  Furthermore, the Adams County District Court had scheduled a one-day hearing on the Landlord's FED action and the counterclaims of the Debtors and Platinum Play.  The matter is presently before the state court, whereas it is not presently before this Court.  This factor weighs in favor of granting relief from stay.

ORDER
Case No. 13-11653 HRT

*Factor 6: Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.*

Platinum Play, is listed as a "Third Party Plaintiff" in the state court litigation and is at the center of that litigation. Platinum Play is a corporation formed by the Debtors, which has not filed for bankruptcy. However, Platinum Play is listed as a third party plaintiff in the state court litigation for purposes of the Debtors' counterclaims. Furthermore, Platinum Play may very well be the tenant under the terms of the Lease. The terms of the Lease are poorly drafted and, therefore, unclear as to whether Michelle Sykes-Thomas or Platinum Play is the tenant. However, there is ample evidence for a court to find that Platinum Play is the tenant. The strongest evidence of Platinum Play as tenant is the fact that Michelle Sykes-Thomas signed the Lease as "Owner" and not individually. Further, Michelle Sykes-Thomas signed a Guaranty of the Lease which named Platinum Play as the tenant under the Lease.

For the reasons stated above, Platinum Play, a third party corporate entity, which is not in bankruptcy, has an important and central role in the state court litigation. Therefore, this factor favors granting relief from stay.

*Factors 7 and 10: Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; and The interest of judicial economy and the expeditious and economical determination of litigation for the parties.*

As explained in the Court's application of the second *Curtis* factor, the disputes between the Debtors and the Landlord are central to the Debtors' bankruptcy case. Here, resolution of the state law FED action and the Debtors' associated counterclaims serves as a prerequisite to the Debtor's ability to pursue this reorganization case.

With the implications of the state court litigation in mind, the Court notes that the matters which are before the state court are not presently before the bankruptcy court. Undoubtedly, the Adams County District Court sits in a far better position to resolve these issues and possesses the jurisdiction and authority to provide a complete resolution. The alternative of this Court trying only those issues over which it possesses clear jurisdiction and leaving the remainder to be tried before the state court incurs the risk of inconsistent determinations from the different courts. Such piecemeal litigation is a poor use of judicial resources. Thus, the Court finds that litigation in state court would not prejudice the interests of creditors and is necessary if this case is to proceed. These factors weigh in favor of granting relief from stay.

*Factor 11: Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.*

The Adams County District Court was prepared to conduct a one day hearing on the Landlord's FED action as well as those counterclaims that could be addressed in the context of

ORDER
Case No. 13-11653 HRT

that proceeding. In contrast, the claims which are before the state court are not presently before the bankruptcy court. This factor weighs in favor of granting relief from stay.

*Factor 12:  The impact of the stay on the parties and the "balance of hurt."*

The Debtors claim that Kim's confrontations with customers and employees of Platinum Play have damaged the company's reputation and caused clients to cancel events. Consequently, these alleged damages have impeded the Debtors' ability to pay rent to the Landlord. Against this backdrop, the Debtors advance an equitable argument in which they ask the Court to deny the Landlord relief from the stay which, at times, the Landlord has failed to respect. In essence, the Debtors argue that the balance of harms falls heavily upon them because they have yet to benefit from the breathing spell the automatic stay is intended to confer.

Kim's willful and repeated public disclosures of specific facts related to the Debtors' bankruptcy can only be characterized as efforts to collect a debt, and thus, as willful violations of the automatic stay. While the Court finds that Kim's actions on behalf of the Landlord constitute willful violations of the automatic stay, the Court cannot go so far as to find that those same violations are sufficient to fully overcome the other factors that weigh in favor of lifting the stay. Simply put, the benefits the Debtors seek by maintaining the stay are not the benefits the stay is intended to convey – namely, an indefinite cessation of rent. The Court cannot, under the banner of equity, maintain the stay. To apply what amounts to an equitable tolling of the Landlord's rights is not the appropriate remedy for the Landlord's violations.

Kim assumed his position as the Landlord's property manager in January of 2013, approximately one month prior to the Debtors' bankruptcy petition. However, the Debtors' problems began well before Kim's arrival. In fact, the Debtors have failed to pay any rent to the Landlord since November 2012, approximately two months prior to Kim's arrival. Even under Kim's watchful eye and, at times, over-zealous enforcement of Lease terms, the Debtors' prospects of running a successful business do not seem to be materially different than they were preceding Kim's involvement. Rather, it is apparent to the Court that the Debtors are still searching for a viable business plan in an effort to discover a profitable path forward.

As evidenced by the Lease, Platinum Play began as a family fun center with an arcade, laser tag, and a bake shop. Since the Debtors have been unable to pay rent, their business plan has evolved to include late-night events where liquor is common. Based on evidence presented at trial, these late-night events run the gamut between a 420[12] party with musical acts to non-

---

[12] "420, 4:20, or 4/20 (pronounced four-twenty) is a code-term used primarily in North America that refers to the consumption of cannabis and by extension, as way to identify oneself with cannabis subculture, and also simply cannabis itself." 420 (cannabis culture), <u>Wikipedia</u>,

(continued...)

ORDER
Case No. 13-11653 HRT

profanity Christian comedians. Furthermore, in an effort to promote profitability, the Debtors have resorted to obtaining special event liquor licenses for Platinum Play events under the guise of a non-profit organization called The Road Called STRATE. These practices are unsustainable, perhaps illegal,[13] violate several terms of the Lease,[14] and evidence the desperation with which the Debtors are running their business.

Furthermore, the purpose of the automatic stay is to provide debtors a breathing spell during which they are free from the pursuit of creditors and have time to manage and reorganize their financial affairs. But, the stay does not provide a reprieve from the Debtors' Lease obligations. Under the terms of section 365 of the Bankruptcy Code, the Debtors are required to perform all their post-petition Lease obligations, including the payment of rent.[15] For cause, a bankruptcy court is empowered to extend the time for performance of obligations with respect to a lease of non-residential real property that fall due within 60 days of the order for relief. But for obligations that fall due after that initial 60 days, the Code gives a bankruptcy court no power to alter the performance obligation. As of now, the Debtors have not paid any post-petition rent to the Landlord. As the Debtors stated at trial, Platinum Play is not generating enough revenue for the Debtors to meet their past Lease obligations and any prospect of Platinum Play being able to do so in the future is speculative.

---

[12](...continued)
http://en.wikipedia.org/wiki/420_(cannabis_culture), (last visited May 7, 2013).

[13] The Court doubts the legality of using an unaffiliated non-profit organization to make application for a special event liquor permit to be used by Platinum Play, a profit making enterprise.

[14] Specifically, the Debtors' recent business practices violate terms of the Lease which govern hours of operation, prohibit night-club like activities, and seek to maintain tenant-mix protections.

[15] 11 U.S.C. § 365(d)(3).

ORDER
Case No. 13-11653 HRT

Thus, finding no equitable justification to maintain the stay,[16] the Court finds that this factor weighs in favor of granting relief from stay.

## B.  The Landlord's Violation of the Automatic Stay

As detailed above, the Landlord, through its property manager, Tony Kim, violated the automatic stay.  Therefore, the Court finds the Landlord in contempt and liable for damages under section 362(k).

The evidence establishes to the Court's satisfaction that Kim instigated the harassment of at least one post-petition event at Platinum Play.  He caused the off-duty police officers, who provided contract security at the adjacent Club Galaxy, to repeatedly appear at the event and question the Debtors and others about the presence of alcoholic beverages.  In a post-petition effort to collect the Debtors' pre-petition rent obligations, Kim provided police with a copy of the Debtors' Lease with the Landlord.  On another occasion, post-petition, he aggressively accosted a dance instructor, her husband and the Debtors' customers outside of Platinum Play and publicly announced that the Debtors were being evicted and owed $200,000.  Moreover, Kim testified untruthfully before this Court, under oath, when he was examined concerning these incidents.

The Court finds that the Debtors have been injured by the Landlord's willful violation of the automatic stay.  The injury is tangible and it is real.  The evidence persuades the Court that customers exposed to such treatment by the Landlord are far less likely to risk planning an event at the Debtors' facility in the future.

Whereas the *existence* of injury to the Debtors caused by the Landlord is clear, the *extent* of that injury is not.  The evidence does not allow the Court to quantify, without resort to pure speculation, the dollar amount lost by the Debtors due to the actions of the Landlord.  What is clear is that the necessity for the Debtors to engage their counsel to file the Emergency Motion

---

[16] Even if the Court were to find that equitable factors strongly favor the Debtors on this point, it lacks the authority to craft a remedy that amounts to an alteration of the Debtors' post-petition Lease obligations.  The source of the Court's equitable powers is § 105.  "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  But "[s]ection 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'"  *In re Sadkin*, 36 F.3d 473, 478 (5th Cir. 1994) (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[3] (Lawrence P. King et al. eds., 15th ed. 1994)).  Here, § 365(d)(3) mandates the payment of post-petition rent.  The Court cannot use its equitable powers under § 105(a) to contradict that specific statutory obligation.

ORDER
Case No. 13-11653 HRT

and seek an emergency hearing was caused by the Landlord's actions.[17]  Therefore, the Debtors will be awarded actual damages in the amount of the attorney fees and costs incurred in connection with filing and prosecuting their Emergency Motion.

## C.  Debtor's Motion to Extend Time to Accept or Reject their Lease

The Court will grant the Debtor's Motion to Extend for cause up to the maximum of 210 days, or September 5, 2013 (or the date of an order confirming the Debtors' plan whichever date is earlier).  The Court finds cause for the extension due to the Landlord's willful violations of the automatic stay.

The Court is mindful that events in the state court could render this relief moot. However, to the extent that the state court does not decide the FED issues prior to the expiration of the initial 120 days allowed under section 365(d)(4)(B)(i), this extension of time will allow the Debtors up to an additional 90 days.  Section 365 provides the Court with no authority, absent Landlord consent, to grant a further extension.[18] The Court notes that this extension does not affect the Debtors' obligations under section 365(d)(3).

## III.  CONCLUSION

Based on the Court's analysis of the *Curtis* factors, the Court finds that cause exists to allow the Landlord to proceed with the pending FED action in state court and for the Debtors to proceed with any counterclaims that may be brought in connection with the FED action as well as any other causes of action the Debtors may have against the Landlord that cannot be pursued as part of the FED action.  As stated above, the parties' claims are based on state created private-rights based on landlord-tenant law, contract law, and allegations of fraud.  The state court is not only the proper forum for such claims, but also the forum which will provide the most complete and expedient resolution to such claims.

The Debtors argue that the lifting the automatic stay is tantamount to rewarding the Landlord for its actions that violated the stay.  It is a compelling argument.  But the unspoken premise of the argument is that the Landlord's post-petition violations of the automatic stay were a significant cause of the Debtors' problems and contributed to their default on Lease obligations.  That causal link is not borne out by the evidence.  To the contrary, the Debtors

_____

[17] At the emergency hearing that the Court held on the Debtor's request for a cease and desist order, it declined to enter such an order.  An injunction in the form of § 362(a) is already in effect and the Court admonished the Landlord's representative that the Landlord is under a legal duty to strictly observe the automatic stay.

[18] 11 U.S.C. § 365(d)(4)(B)(ii).

ORDER
Case No. 13-11653 HRT

became unable to service their Lease obligations months before the post-petition incidents that the Court has found violated the stay. Those actions that violated the stay certainly diverted the Debtors' time and effort. But the Court is unable to find that those actions changed the Debtors' situation so fundamentally that, in equity, it must find that the Landlord's violations override all of the other factors that lead the Court to find that cause exists for lifting the stay.

In addition, the Court finds the Landlord has clearly and willfully violated the automatic stay. Therefore, the Court will award actual damages as permitted under section 362(k) of the Code. Under section 362(k), actual damages include costs and attorneys' fees.[19] The Court finds that costs and attorneys' fees are the only damages suffered by the Debtors, which the Court has the ability to quantify. Thus, the Court awards the Debtors costs and attorneys' fees necessary to file and prosecute their Emergency Motion.

Finally, the Motion to Extend will be granted. The Landlord's willful violations of the automatic stay provide cause for extension of the 120 deadline to assume or reject the Debtors' Lease of non-residential real property. Knowing whether or not the Debtors' Lease survives the FED action is prerequisite to the issue of assumption or rejection. The extension will greatly increase the likelihood that the state court FED action can run its course before the deadline for the Debtors to decide whether to assume or reject the Lease.

Therefore, it is

**ORDERED** that HIT, Inc.'s *Motion for Relief from Automatic Stay* (docket #10) is GRANTED. HIT, Inc. may proceed in state court to prosecute its FED action and to execute on any judgment it may receive for possession only. Any monetary judgment resulting from the FED action shall continue to be subject to the provisions of 11 U.S.C. § 362(a) and subject to the Debtors' bankruptcy proceedings. Debtors are free both to prosecute any counterclaims to the FED action and to pursue any state court causes of action they may have against HIT, Inc., if any, that must be prosecuted outside the FED process. It is further

**ORDERED** that *Debtors' Emergency Motion under Rule 9020 for Contempt and for Damages under Section 362(k) for Violation of Automatic Stay and Request for Forthwith Emergency Cease and Desist Order* (docket #47) is GRANTED IN PART and DENIED IN PART. The Court DENIES Debtors' request for a cease and desist order. The Court GRANTS the Debtor's request for damages under 11 U.S.C. § 362(k). The Court finds HIT, Inc., liable for actual damages in the form of attorney fees and costs incurred by the Debtors in pursuit of their Emergency Motion. The Debtors' counsel shall submit a statement of those fees and costs within 14 days of the date of this Order. Thereafter, HIT, Inc., may respond to counsel's

---

[19] 11 U.S.C. § 362(k) (providing, in pertinent part, "an individual injured by any willful violation of a stay… shall recover actual damages, including costs and attorneys' fees[.]").

ORDER
Case No. 13-11653 HRT

statement of fees and costs within 14 days after said statement is filed with the Court.  Based on counsel's statement and any response filed by HIT, Inc., the Court will make its determination of damages and enter judgment.  It is further

**ORDERED** that the Debtors' *Motion to Extend Debtors' Time to Assume or Reject Leases and Notice of Chapter 13 Plan Terms of Part V.G* (docket #33) is GRANTED.  The deadline for the Debtors to assume or reject their Lease of non-residential real property from HIT, Inc., is extended to September 5, 2013, or the date of an order confirming the Debtors' chapter 13 plan whichever date is earlier.

Dated this ___9th___ day of May, 2013.

**BY THE COURT:**

Howard R. Tallman, Chief Judge
United States Bankruptcy Court